20

[651 NYS2d 555]

In the Matter of ROBERT G. WHITEMAN (Admitted as ROBERT GORDON WHITEMAN), and STEPHEN G. GORRAY (Admitted as STEPHEN GERARD GORRAY), Attorneys, Respondents. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, December 9, 1996

APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Michael L. Epstein* of counsel), for petitioner.

*Jerome Karp, P. C.,* Brooklyn, for Robert G. Whiteman, respondent.

*Joseph W. Ryan, Jr.,* Uniondale, for Stephen G. Gorray, respondent.

**OPINION OF THE COURT**

Per Curiam.

In this proceeding, the respondents were served with a petition containing six charges of professional misconduct. The Special Referee sustained all six charges. The Grievance Committee now moves to confirm the Special Referee's report. Each respondent has submitted an affirmation in response, requesting that the Court impose an appropriate sanction but, in any event, no sanction more severe than a censure.

Charge One alleged that the respondents converted to their own use and benefit and/or for purposes other than that for which they were intended, funds entrusted to them on behalf of a client.

The respondents were retained to represent Lynn Southard in a medical malpractice action against Dr. Robert Ruggiero on or about June 5, 1985. The respondents engaged Dr. Leonard Arbeit as a medical consultant. Dr. Arbeit was to be paid $5,000 for his services. Southard's case was settled for $665,000 on or about January 26, 1990. The respondents received a check in the amount of $325,000 from Medical Liability Mutual Insurance Company as part of the settlement in Southard's case. They deposited that sum into their attorney IOLA account at Manufacturers Hanover Bank.

The respondents thereafter made the following disbursements from their IOLA account:

| Check # | Date | Recipient | Amount |
|---------|------|-----------|--------|
| 112 | 2/1/90 | Lynn Southard (settlement proceeds) | $ 97,193.26 |
| 113 | 2/1/90 | Whiteman & Gorray (legal fees) | $120,228.14 |
| 114 | 2/1/90 | Whiteman & Gorray (disbursements) | $ 6,089.17 |
| 115 | 2/1/90 | Siben & Siben (legal fees) | $ 98,368.48 |
| 116 | 2/1/90 | Siben & Siben (disbursements) | $ 3,121.05 |

On or about February 1, 1990, the respondents deposited a $120,228.14 check drawn on their IOLA account into their attorney operating account. On or about February 2, 1990, the

respondents made a combined deposit into their attorney operating account of a check, drawn on their IOLA account in the amount of $6,089.07, and additional funds in the amount of $3,453.36. The respondents' disbursement sheet indicates a $5,000 obligation due and owing to Dr. Arbeit. They would not have received the $5,000 disbursement were it not for the obligation to Dr. Arbeit. Although they had received the amount required to satisfy the disbursements in the Southard matter, the respondents only paid Dr. Arbeit $500 of the $5,000 owed him on October 29, 1990.

Between February 2 and October 29, 1990, there should have been a minimum balance of $5,000 in the respondents' attorney operating account. Bank statements corresponding to the respondents' operating account indicate the following balances:

| | |
|---|---|
| $1,465.89 | on April 2, 1990 |
| 652.74 | on April 3, 1990 |
| 175.74 | on April 4, 1990 |
| 14.13 | on April 5, 1990 |
| (215.92) overdraft (OD) | on April 6, 1990 |
| .08 | on April 9, 1990 |

Dr. Arbeit received a second payment of $500 on or about March 18, 1991.

Between October 29, 1990 and March 18, 1991, there should have been a minimum balance of $4,500 in the respondents' operating account. Bank statements corresponding to the respondents' operating account indicate the following balances:

| | |
|---|---|
| $1,846.91 | on November 19, 1990 |
| 1,098.43 | on November 20, 1990 |
| (271.09) OD | on November 23, 1990 |
| 596.31 | on November 30, 1990 |
| (143.44) OD | on January 24, 1991 |

By failing to properly distribute the escrow proceeds to Dr. Arbeit and using the monies for their own use and benefit, the respondents converted funds entrusted to them in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

Charge Two alleged that the respondents engaged in conduct that adversely reflects on their fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22

NYCRR 1200.3 [a] [8]), based on the conduct outlined in Charge One.

Charge Three alleged that the respondents engaged in conduct involving fraud, deceit, dishonesty, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]), based on the conduct outlined in Charge One.

Charge Four alleged that the respondents failed to maintain a ledger or similar record for their attorney IOLA account in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

During its investigation, the Grievance Committee served the respondents with a judicial subpoena duces tecum requesting that they provide original checks, check stubs, deposit slips, monthly bank statements, and ledger sheets corresponding to their attorney IOLA account for the years 1990, 1991, and 1992. In response to that request, the respondents forwarded a letter on August 9, 1993, enclosing some of the requested information. They indicated that they had never maintained any ledger book. Nor did they provide any similar record for sums held in escrow as attorneys.

Charge Five alleged that the respondents, in representing Southard, failed to properly file retainer and closing statements with the Office of Court Administration (OCA) and/or engaged in activity that adversely reflects on their fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Although retained in the Southard matter on June 5, 1985, the respondents did not file the required retainer statement with the Office of Court Administration until May 23, 1986. The respondents settled Southard's case on or about January 26, 1990. Payments were made on or about February 1, 1990, and the final annuity papers were received by the respondents on April 30, 1991.

By letter dated November 23, 1992, the Grievance Committee requested that respondents provide a copy of the closing statement in the Southard matter. In their answer of January 11, 1993, the respondents indicated that a clerical error prevented the closing statement from being properly filed. Despite being put on notice that no closing statement had been filed, the respondents failed to file that statement until September 2, 1993.

Charge Six alleged that the respondents failed to timely file the required retainer and closing statements with the Office of

Court Administration in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]) and/or in violation of 22 NYCRR 691.20 (a) (1) and (b) (1).

The respondents represented Josephine and William Kelly in a medical malpractice action against Massapequa General Hospital and O. Joshua Jurmann. Although they were retained on or about June 5, 1987, the respondents did not file a retainer statement in the Kelly matter until approximately March 12, 1990, the date on which the clients were paid the settlement proceeds. The respondents complied with the Grievance Committee's request for their file in the Kelly matter, which contained a purported closing statement dated September 2, 1993 and signed by the respondent Gorray. A review of OCA records for 1993 and 1994 revealed that no closing statement was ever filed with OCA by the respondents in the Kelly matter.

The respondents represented Robert and Joan Horn in a personal injury action against Ora Barrocas, Sal Barrocas, and Carol Barrocas. Although they were retained on or about April 28, 1986, the respondents did not file a retainer statement until January 19, 1990, the date when the clients received the settlement proceeds. They did not file a closing statement until September 19, 1990.

The respondents represented Mary Lou Paoli and Gilbert Paoli in a medical malpractice action against Herodutos Damainos, Vergilio Mendoza, and others. The respondents received a settlement check in the amount of $23,500 on or about December 21, 1989. They did not file a retainer statement until January 16, 1990, approximately one month after the case was settled. No closing statement was filed until November 15, 1990.

The respondents represented Carole Galinsky in a medical malpractice suit. Although they were retained on or about July 6, 1987, the respondents did not file a retainer statement until October 1, 1987.

The respondents were retained to represent Lana Rumpf in a personal injury suit on or about May 13, 1984. They did not file a retainer statement until September 20, 1985.

The respondents were retained to represent Patricia Mitchell in a medical malpractice action on or about September 16, 1988. The retainer statement provided to the Grievance Committee is dated April 2, 1990. The closing statement filed by the respondents indicates that they received settlement proceeds on February 7, 1990 and March 23, 1990.

After reviewing all of the evidence, we conclude that the Special Referee properly sustained all six charges. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, we have considered that Dr. Arbeit eventually received full compensation with interest. We have also given consideration to the respondent Whiteman's substantial community activities and to the serious medical and personal problems besetting the respondent Gorray and his family. Additionally, neither respondent has a prior disciplinary history. Accordingly, it is the decision of this Court that the respondents be censured for their professional misconduct.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and RITTER, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondents, Robert G. Whiteman and Stephen G. Gorray, are censured for their professional misconduct.